# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAYMOND FRANTZ** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 06-3210** |
| **WILLIAM J. GRESS, ET AL.** | : | |
| **Defendants.** | : | |

**Tucker, J.**                                                                 **June 10, 2008**

<u>**MEMORANDUM & ORDER**</u>

Plaintiff Raymond Frantz brings this action pursuant to § 1983, alleging violations of his

First and Fourth Amendment rights, violations of 18 PA. CONS. STAT. ANN. § 5507(a)(2), and

malicious prosecution.   Plaintiff also brings an Equal Protection challenge as to the facial

unconstitutionality of §§ 10-723, 10-723.1(1) of the Philadelphia Code because the statute treats

handbillers differently than vendors of materials, products, or foods.

Specifically, Plaintiff alleges that he was leafleting religious materials at 347 South

Street, Philadelphia, Pennsylvania on Saturday, April 9, 2005 around 11:45 p.m.  Plaintiff

maintains that the sidewalk was 130 - 135 inches wide and that he was standing within 1 - 1 ½

feet of the street side edge of the sidewalk.  Plaintiff states that he was not blocking pedestrian

passage, did not give materials to passersby who indicated they did not want them, avoided

arguments with passersby, cleaned up the area of distribution at the end of his leafleting, and was

respectful and peaceful to all members of the public.

According to Plaintiff, Defendant Police Officer William J. Gress arrested and cited

Plaintiff, without probable cause, for violation of Philadelphia Code Section 10-723, Distribution

of Commercial & Non-Commercial handbills on sidewalks, streets and private property, for

failing to clean up handbills daily at the end of the day within a 100-foot radius of the location where the handbills were distributed.

Plaintiff states that there were few, if any leaflets discarded within a 100-foot radius, that he picked up discarded leaflets periodically that night as he leafleted, that handbills were not clogging gutters in the area, and that Plaintiff had not reached the end of his leafleting when Defendant Gress arrested him.  Furthermore, Plaintiff states that Defendant Gress did not ask Plaintiff if he was finished leafleting, did not instruct Plaintiff to pick up discarded leaflets when he was done, and did not tell Plaintiff to move out of the way of pedestrians.

Defendants counter that while patrolling, Officer Gress observed Plaintiff distributing leaflets while standing in the middle of the sidewalk.  Officer Gress avers that he observed passing pedestrians who were forced to walk in the street or stop on the sidewalk.  Officer Gress also noted that a large amount of Plaintiff's pamphlets were in the gutters and sewers in Plaintiff's immediate vicinity. Gress avers that he approached Plaintiff and reviewed the material, then instructed Plaintiff to move away from the middle of the sidewalk and to stand in a manner that would not impede pedestrian traffic.  Plaintiff refused to move.  For 15-20 minutes, Plaintiff allegedly continued in his refusal to move to one side of the sidewalk, and was eventually arrested and cited.

On May 26, 2005, Plaintiff was convicted in Philadelphia Municipal Court of violating § 10-723.  However, on appeal to the Common Pleas Court, all charges against Plaintiff were dismissed with prejudice.

On June 18, 2006, at about 1:15 a.m., Plaintiff alleges that Defendant, Officer John Hanejko, stopped Plaintiff from leafleting religious pamphlets on a public sidewalk at 4th and

2

South Streets in Philadelphia.  Officer Hanejko testified that he approached Plaintiff after observing a number of pamphlets on the ground.  Hanejko avers that Plaintiff was in the middle of sidewalk handing pamphlets identical to those Hanejko observed lying on the ground. Hanejko explains that he instructed Plaintiff on his "rights and obligations with respect to leafleting religious material on a public sidewalk."  Specifically, according to Defendant, he told Plaintiff that he was not allowed to obstruct the sidewalk or stand in the middle of the sidewalk and force his material onto pedestrians.  Hanejko claims that Plaintiff became irate upon hearing these instructions, asked for Hanejko's badge number, and thereafter left the area.  Plaintiff testified that he left the area only to avoid arrest.

Plaintiff further challenges § 10-723 & 723.1(1) stating that it is facially unconstitutional because it violates the Equal Protection Clause of the Fourteenth Amendment. Section 10-723 & 723.1(1) requires handbillers to clear discarded handbills within a 100 foot radius of the area of distribution at the end of the daily distribution, but do not require vendors of materials, products, or food to clear trash, wrapper, litter or refuse they generate within a 100 foot radius of the site of a sale.  Plaintiff acknowledges that minimizing litter or trash and preventing the clogging of sewers and culverts are the ostensible purposes for the regulation.  However, Plaintiff argues that handbillers are similarly situated to vendors whose customers may throw wrappers or other paper products to the ground.

This Court held a bench trial on February 19-20, 2008.  The following constitutes the Court's findings of fact and conclusions of law.  Fed. R. Civ. Pro. 52(a).[1]

---

[1]Federal Rule of Civil Procedure 52(a) states in relevant part: "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state its conclusions of law separately."

**I.     FINDINGS OF FACT**

1.      In 1984, Plaintiff started distributing religious tracts with an outreach campaign

        for Jews for Jesus and Jewish Outreach Partnership for the Philadelphia Area

        ("JOPPA").  He was given instructions on how to leaflet. (N.T. 2/19/08 16:16-

        17:1.**)**

2.      All the leaflets that Plaintiff distributes are religious in subject matter.

3.      On April 9, 2005, at about 8:30pm, Plaintiff was distributing religious printed

        material ("leaflets" or "tracts") on the 300 block of South Street in Philadelphia,

        Pennsylvania.  (N.T. 2/19/08 35:14-16.)

4.      There was a heavy flow of foot traffic. There were no fights or violence.

        Passersby did not speak to Plaintiff.  Plaintiff did not preach but occasionally

        stated "the Word of God," "God's word," or "God's word is free."

5.      Officer Gress was assigned to the 3rd Police District on April 9, 2005 with specific

        assignment to South Street district as a bicycle patrol officer.  (N.T. 2/19/08

        146:15-23.)

6.      On April 9, 2005, Philadelphia Police Officer Gress observed Plaintiff in the

        middle of the sidewalk.  (N.T. 2/19/08 146:21-23.)

7.      The sidewalk was adjacent to a Starbucks Coffee Shop and on the northern side of

        South Street.

8.      The sidewalk also had a fire hydrant, various newspaper boxes, and barricades; all

        of which were located on area of the sidewalk nearest to the street. Ex. P-16.

9.      Officer Gress initially observed Plaintiff from the corner diagonal to the

4

Starbucks. Officer Gress observed Plaintiff for approximately three to four minutes.

10.     At the time that Officer Gress observed Plaintiff's location, there were numerous pedestrians attempting to negotiate the sidewalk adjacent to the Starbucks Shop. Several pedestrians, unable to continue on their path, abandoned the sidewalk and began to walk in the street.  Other pedestrians attempted to pass Plaintiff by walking very close to the exterior wall of the Starbucks.  Officer Gress also observed Plaintiff approaching pedestrians and extending his hand with leaflets. . (N.T. 2/19/08 153:4-19.)

11.     Officer Gress approached Plaintiff and observed either a cross or a bible on the cover of a leaflet and determined that the materials appeared to be religious in nature.  (Id.)

12.     Officer Gress requested that Plaintiff move from the middle of sidewalk to a location out of the flow of traffic and closer to the curb.  (Id.)

13.     Plaintiff refused to change his position on the sidewalk informing Officer Gress that he has a constitutional right to distribute his materials.  (N.T. 2/19/08 158:25-159:10.)

14.     Officer Gress again instructed Plaintiff to distribute his materials from a location closer to the curb.  At a point in the verbal exchange between Plaintiff and Officer Gress, two other officers approached.  (N.T. 2/19/08 85:22-86:2; 160:17-19.)

15.     Plaintiff continued to refuse to alter his position on the sidewalk  and was arrested.  Plaintiff was removed from the area by the other officers.  (N.T. 2/19/08

160; 10-14)

16.   Plaintiff was issued citation No. 2005-003198 for a violation of the Philadelphia

Code Section 10-723, Distribution of Commercial & Non-Commercial handbills

and transported to the police station.  Plaintiff was detained for a total of ninety

minutes.

17.   The Police Report described Plaintiff's conduct as "standing in the middle of

sidewalk and stopping people to hand them handbills causing them walk [sic] in

the street creating a hazardous condition . . . ."  (Pl. Mot. Summ. J. Ex. P10.)

18.   The District Attorney amended the charges to include "Obstructing the Highway"

under 18 Pa. C.S.A. § 5507 at the time of the hearing.

19.   Plaintiff proceeded to trial in the Philadelphia Municipal Court and was found

guilty.  Plaintiff was also fined.

20.   Plaintiff testified that he appealed the conviction. (N.T. 2/19/08 53:24-25.)

21.   No evidence of the disposition of such appeal was presented by Plaintiff at trial.

22.   On June 18, 2006 approximately 1:00am. Plaintiff returned to the 300 block of

South Street in Philadelphia to distribute leaflets containing religious subject

matter.

23.   Officer Hanejko was assigned to the 3rd Police District on June 18, 2006 with

specific assignment to the South Street district as a bicycle patrol office.

24.   Officer Hanejko observed Plaintiff for approximately five minutes from across

Fourth Street where Officer Hanejko was on his bike patrol. (N.T. 2/19/08 3:16-

23.)

25.     Officer Hanejko observed Plaintiff standing in the middle of the sidewalk with his
        arm extended handing out leaflets.  (N.T. 2/20/08 4:6-5:9.)

26.     After observing "a picture of God or a cross" on the leaflet, Officer Hanejko
        determined that the leaflets were religious in nature.  (N.T. 2/20/08 9:2-5.)

27.     Officer Hanejko observed several pedestrians, unable to continue on their path,
        abandoned the sidewalk and began to walk in the street.  Other pedestrians
        attempted to pass Plaintiff by walking very close to the exterior wall of the
        Starbucks. N.T. 2/20/08 4:6-5:9.)

28.     Officer Hanejko thereafter approached Plaintiff and informed him that he could
        not stand in the middle of the sidewalk while distributing his materials, as he
        would obstruct the highway.  (N.T. 2/20/08 4:21-5:5.)

29.     Officer Hanejko did not instruct Plaintiff to leave the area or inform Plaintiff that
        he could not distribute his materials.

30.     Plaintiff requested Officer Hanejko's badge number and thereafter left the area.
        (N.T. 2/20/08 5:6-9.)

## II.     CONCLUSIONS OF LAW

**The following conclusions are entered:**

1.     Determining the credibility of witnesses is primarily the province of the factfinder.
       United States v. Booker, No. 06-1074, 237 Fed. App'x 782, 782 (2007).

### A.     First Amendment

2.     "[S]preading one's religious beliefs or preaching the Gospel through distribution
       of religious literature and through personal visitations is an age-old type of

7

evangelism with as high a claim to constitutional protection as the more orthodox types." <u>Murdock v. Pennsylvania</u>, 319 U.S. 105, 110 (1943).

3.      However, principles of religious tolerance do not relieve any individual from complying with laws of general applicability, so the right of exercise does not relieve an individual of duty to comply with a valid and neutral law of general applicability.  <u>Employment Div. Dep't of Human Re. of O. v. Smith</u>, 494 U.S. 872, 879 (1990), <u>superceded by statute</u>, Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb.

4.      "The principles of the First Amendment are not to be treated as a promise that everyone with opinions or beliefs to express may gather around . . . at any public place and at any time a group for discussion or instruction." <u>Poulos v. New Hampshire</u>, 345 U.S. 395 (1953).  Even though First Amendment rights are to be guarded, they may still be regulated by the state. "The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy." <u>Cox v. Louisiana</u>, 379 U.S. 536, 554 (1965).

5.       The government may impose reasonable "time, place and manner restrictions" on First Amendment activity to further significant governmental interests. <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 115 (1972)(citing <u>Cox v. New Hampshire</u>, 312

U.S. 569, 575 (1941).

6.   Where Defendants' restrictions on speech are content-based, those restrictions are
subject to the highest degree of scrutiny whereby they may withstand
constitutional review only where they are narrowly tailored to achieve a
compelling governmental interest.  Capitol Square Review & Advisory Bd .v.
Pinette, 515 U.S. 753, 761-62 (1993).

7.   Protestors may be directed to espouse their message from a designated area. This
is to ensure that their message will be seen and heard, and ensures that public
safety and order will be maintained.  Concerned Jewish Youth v. McGuire, 621
F.2d 471, 475 (2d Cir. 1980).

8.   Where speech moves beyond mere speech and into the realm of unlawful activity,
the fact that the speaker was engaged in speech does not mean that probable cause
for the arrest must be discounted or ignored.  See Corbett v. Goode, No. 87-7379,
990 WL 181499 at *3 (E.D. Pa.  Nov. 19, 1990); Armes v. City of Philadelphia,
706 F. Supp. 1156, 1163 (E.D. Pa. 1989), aff'd,897 F.2d 520 (3d Cir. 1990); see
also Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996).

9.   Officer Gress recognized that the materials that Plaintiff was distributing on April
9, 2005 were protected speech.

10.   Officer Gress never asked Plaintiff to leave the area.  Rather, he merely instructed
Plaintiff to change his position so as to not impede pedestrian traffic.  This
instruction was given so that Plaintiff could continue to distribute his pamphlets in
accordance with the law.

9

11.     When Officer Gress requested that Plaintiff move from the middle of the sidewalk, Officer Gress employed narrow tailoring of the law as he was attempting to restrict only as much of Plaintiff's activity as was necessary to protect the safety of the pedestrians on South Street.

**B.     Fourth Amendment**

**B.1     Officer Gress and the arrest on April 9, 2005**

12.     Courts determine if probable cause existed at the time of the arrest by evaluating whether "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the plaintiff] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964)(citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Henry v. United States, 361 U.S. 98, 102 (1959)) accord, Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) ("Probable cause exists if there is a 'fair probability' that the person committed the crime at issue."(citing Harris v. City of Philadelphia, 35 F.3d 840-45 (3d Cir. 1994))).

13.     Probable cause to arrest requires more than a "mere suspicion," but it does not require that an officer possess sufficient evidence to prove guilt beyond a reasonable doubt. Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). "It is not the function of the police to arrest only guilty persons; rather, the function of the police is to arrest persons based on probable cause." Mordan v.Siegfeld, No 94-0025, 1995 U.S. Dist. LEXIS 2507, at *7 (E.D.Pa. Feb. 27, 1995).

14.    Officer Gress had probable cause to arrest Plaintiff on April 9, 2005 because

Plaintiff refused Officer Gress's repeated requests that Plaintiff move from the

middle of the sidewalk where Plaintiff was causing pedestrians to walk into the

street or close to the wall of the Starbucks in order to avoid Plaintiff.

**B.2    Officer Hanejko and the encounter on June 18, 2006**

15.    "[L]aw enforcement officers do not violate the Fourth Amendment by merely

approaching an individual on the street or in another public place, by asking him if

he is willing to answer some questions, by putting questions to him if the person

is willing to listen, or by offering in evidence in a criminal prosecution of his

voluntary answers to such questions."  Florida v. Royer, 460 U.S. 491, 497

(1983).

16.    "If there is no detention—no seizure within the meaning of the Fourth

Amendment—then no constitutional rights have been infringed."  Royer, 460 U.S.

at 498.

17.    "The person approached, however, need not answer any question put to him;

indeed, he may decline to listen to the questions at all and may go on his way." Id.

at 498-99 (citing Terry v. Ohio, 392 U.S. 1, 32-33 (1968)(Harlan, J., concurring);

id. at 34 (White, J., concurring).

18.    Officer Hanejko had the right to engage in conversation with Plaintiff to instruct

him on the proper ways to distribute materials according to the law.

19.    Plaintiff was not detained during this brief conversation.

20.    This was evidenced by the fact that Plaintiff chose to end the encounter and go on

11

his way and was permitted to do so without further incident.

21.   Without being detained, Plaintiff's Fourth Amendment rights could not have been violated.

**C.   Malicious Prosecution**

22.   In Pennsylvania, as in most jurisdictions, a party bringing a malicious prosecution claim must demonstrate that (1) the defendant instituted a criminal proceeding; (2) without probable cause; (3) with malice; and (4) "that the proceedings were terminated in favor of the plaintiff."  Strickland v. Univ. of Scranton, 700 A.2d 979, 984 (Pa. Super. 1997)(quoting Cosmas v. Bloomingdale Bros. Inc., 442 Pa. Super. 476, 481 (1995)).

23.   Plaintiff cannot properly sustain a claim for malicious prosecution.

24.   Officer Gress had probable cause to arrest Plaintiff on April 9, 2005 because Plaintiff refused Officer Gress's repeated requests that Plaintiff move from the middle of the sidewalk where Plaintiff was causing pedestrians to walk into the street or close to the wall of the Starbucks in order to avoid him.

25.   Plaintiff presented no evidence that Officer Gress acted with malice.  Instead, evidence was presented that Officer Gress actually engaged in conversation with Plaintiff for five to ten minutes in an attempt to convince him to comply with the law and thus avoid an arrest.

26.   The criminal proceedings did not terminate in Plaintiff's favor.  He was found guilty of the charges.

**D.**      **Equal Protection**

27.      Plaintiff seeks to challenge the validity of § 10-723 & 723.1(1) of the Philadelphia

Code stating that it is facially unconstitutional because it violates the Equal

Protection Clause of the Fourteenth Amendment.

28.      Plaintiff has failed to sustain his burden of proof on this claim.  Plaintiff offered

insufficient evidence at trial on the unconstitutionality of §§ 10-723, 10.723.1(1)

therefore, the Court cannot find in Plaintiff's favor on this claim.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAYMOND FRANTZ** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 06-3210** |
| **WILLIAM J. GRESS, ET AL.** | : | |
| **Defendants.** | : | |

<u>**ORDER**</u>

**AND NOW**, this _____ day of June, 2008, after a bench trial, pursuant to Federal Rule of

Civil Procedure 52(a), **IT IS ORDERED that:**

1.    **JUDGMENT** is **ENTERED** in favor of Defendant and against Plaintiff on

Counts I-VI.

2.    The Clerk of Court shall mark this case as **CLOSED**.


**BY THE COURT**:

/s/ Petrese B. Tucker

_____

**Hon. Petrese B. Tucker, U.S.D.J.**

14